## BETSILL v. BETSILL.

1. Arbitrators appointed to assess the value of an intestate estate and to make an equitable and fair distribution thereof, announced their conclusions orally, which being objected to by one of the distributees, a reappraisement was made, with consent of all parties. A written paper was then executed, assigning different tracts to several of the distributees at a stated price per acre, and directing one tract of uncertain acreage to be surveyed and sold. Afterwards, another paper was signed, fixing the amounts to be paid for equality. *Held*, that there was but one award.

2. The complaint alleged certain wishes of intestate as to plaintiff's interest in intestate's estate, which estate was submitted by all the distributees to arbitrators for distribution. *Held*, that a demurrer to the complaint did not admit this allegation, as it was insufficiently pleaded, (1) because it was not contained in the submission ; and (2) because the law controls the distribution of an estate where the decedent fails to express his wishes in the form of a duly executed will.

3. After plaintiff had received a tract of land at a price stated, under this award, upon which was charged a sum of money for equality of partition in favor of a brother, he signed deeds to other distributees, and allowed judgment to go against him by default for the sum so assessed, under which his brother bought this land. He afterwards filed his complaint, asking that this award, judgment, and purchase be all set aside, upon the grounds that he had recently and accidentally discovered that one of the arbitrators did not know that he was to "assign" property to the distributees, and another did not know that the tract assigned to plaintiff was to be assessed, under intestate's

wishes, without regard to the value of improvements thereon, plaintiff supposing it had been so done. *Held,* that a demurrer to the complaint was well sustained, for (1) the submission required the arbitrators to allot shares to the distributees, and besides plaintiff complained only of the valuation; and (2) a majority of the arbitrators was sufficient to make an award.

Before KERSHAW, J., Union, October, 1888.

This was an action by William T. Betsill against his brothers and sisters, commenced April 27, 1888. The complaint was as follows:

The complaint of the above named plaintiff respectfully shows to this court:

1. That his father, Joel Betsill, late of Union County, died intestate on the 22nd day of June, 1881, seized and possessed of considerable real and personal estate, and left as his sole heirs at law and distributees his children, the plaintiff herein, Wm. T. Betsill, and the defendants herein, Robert J. Betsill, J. Fincher Betsill, Joseph A. Betsill, James L. Betsill, Anna M. Gore, Eugenia Davis, and Pauline Moore.

2. That frequently in his life-time, and especially just before his death, the said Joel Betsill gave full and explicit directions as to the manner in which he wished his estate divided among his children aforesaid, and directed especially that the land on which the plaintiff herein, Wm. T. Betsill, lived, be assigned to him at a valuation made without the buildings, for the reason that said Wm. T. Betsill had erected said buildings at his own expense.

3. That in pursuance of said request and direction on the part of the said Joel Betsill, and in order to carry out his wishes and intention, his children, after his death, all being of age, entered into a written agreement, dated 12th November, 1881, by which they chose W. S. Gregory, G. S. Gregory, and R. F. Ray as arbitrators to divide said estate among them, the said children, a copy of which is hereto annexed as a part of this complaint, and marked exhibit A.

4. That subsequently the said arbitrators entered upon the discharge of their duties, but before doing so, were fully informed,

as was then supposed, as to the intention, wishes, and directions of the said Joel Betsill in regard to the division of said estate.

5. That thereafter, to wit, on December 15, 1881, the said arbitrators made an award, against which the plaintiff protested, on the ground that said arbitrators had not carried out the intentions of his deceased father, in regard to the land awarded to him.

6. That thereafter, to wit, on February 7, 1882, the said arbitrators made and published their second decision or award, a copy of which is hereto annexed as a part of this complaint, marked exhibit B, by which they assigned to the said Wm. T. Betsill the plantation intended for him by the said Joel Betsill, at a valuation of six and a quarter dollars per acre, and in accordance with and in furtherance of their said award the said arbitrators did, on June 12, 1882, make their final award, that the said Wm. T. Betsill pay to R. J. Betsill $750.25, the excess of the valuation placed on the said tract of land, and made the said sum a first lien on said land, a copy of which is hereto annexed as exhibit C.

7. That said valuation was too high and otherwise erroneous, in this, that it did not express the joint and several opinion of the three arbitrators, inasmuch as G. S. Gregory never at any time knew that it was the intention of the said Joel Betsill that said land should be valued and assigned to Wm. T. Betsill without the buildings, and when he gave his consent to the said valuation of six and a quarter dollars per acre, he consented to such valuation and the award of seven hundred and fifty 25-100 dollars to R. J. Betsill, as including the buildings on said land, otherwise he would not have consented to the said valuation and award. That furthermore the said Robert F. Ray never at any time was aware that it was the duty of the said arbitrators in the premises to assign lands to the individual heirs at law of the said Joel Betsill, but supposed that their duty and labor ended when the valuation thereof had been made, and that in any act done by him beyond said valuation he acted under a misconception of his duties in the premises.

8. That the said Wm. T. Betsill, the plaintiff herein, was not aware of this misunderstanding on the part of the said Robert F.

Ray and the said G. Sandford Gregory as to the duties as arbitrators as aforesaid until long afterwards, to wit, on salesday in December, 1884.

9. That by the said unreasonable and erroneous valuation and assessment of said land and the consequent award of the said sum of $750.25 against the said Wm. T. Betsill, great injury was done to him, and an unfair division of said estate was made.

10. That the said Wm. T. Betsill protested against said valuation and assignment to him of said land at said valuation, and at the said award of $750.25, and refused to accept it, or abide by it, and proposed to pay the forfeit fixed and set forth in exhibit A of this complaint, though he was not aware at that time of the misapprehension under which the arbitrators labored.

11. That said land is and was at the time of said valuation and assessment and assignment not worth more than $1,200, with buildings.

12. That on the    day of September, 1884, Robert J. Betsill instituted an action in the Court of Common Pleas for Union County aforesaid, against the plaintiff herein, for the said sum of $750.25 awarded, as set forth in the 6th paragraph of this complaint, with interest. That the plaintiff herein, unaware of the misapprehension under which the said arbitrators, G. Sandford Gregory and Robert F. Ray, had labored, as aforesaid, and being unable to obtain that information except by accident, and therefore ignorant of the defence which he might and would otherwise have interposed to said action on that ground, and relying on the belief that the said arbitrators had acted throughout with a full and proper understanding of their duties in the premises, did not defend said action, but, on the contrary, allowed the same to go by default, and judgment for eight hundred and ninety-six 32–100 dollars and costs was obtained in said action, and duly entered up against the plaintiff herein in said court on    day of October, 1884, and is No. 6072 on the judgment roll of said court; and that on salesday in December, 1884, the land assigned to plaintiff by said arbitrators was sold under said judgment, and purchased by the said R. J. Betsill for $800, who received a deed thereto from the sheriff of said county, and still owns the same.

13. The plaintiff alleges further that, being unaware of the

said misapprehension of the said arbitrators, and of his rights in the premises, and of his liability to lose his rights thereby, and being without counsel, and relying on the belief that the arbitrators had acted throughout with a full and proper understanding of their duties in the premises, he signed his name to some, if not all, of the deeds which the said heirs at law of the said Joel Betsill interchanged among themselves, but alleges that he would not have done so had he known of the mistake under which the said arbitrators were laboring at the time .as to their duties respecting said valuation, assessment, assignment, and award; that is, the misapprehension of the said arbitrators as already set forth.

14. That on account of the misunderstanding under which the said two arbitrators labored, and the mistake made by them in consequence thereof, the said arbitration was without foundation, and was null and void, and if not set aside will entail great loss and injury and injustice on the plaintiff, and the defendants refuse to modify the same.

Wherefore the plaintiff demands judgment: 1. That the said arbitration and all the proceeding had by said arbitrators be adjudged null and void, and that the same be set aside and vacated. 2. That said judgment and the said sale be set aside and vacated, and the said deed be cancelled. 3. That the said real and personal estate be partitioned according to law and the practice in this court, among the parties who are entitled thereto. 4. For such other and further relief as may be just. 5. For costs.

## EXHIBIT A.

*To whom it may concern:* Whereas our father, the late Joel Betsill, of the county and State aforesaid, died seized and possessed of a considerable estate, both real and personal, leaving no regular will and testament distributing his estate; and whereas we are all of lawful age and capable of looking to our own interest, and are desirous (as far as practicable) of carrying out the often expressed desire of our said parent with regard to dividing his estate without recourse to law. Now, therefore, be it known that we, the children, sons and daughters of said deceased, do hereby agree that W. Simpson Gregory, Robert F. Ray, and G. Sandford Gregory, all disinterested neighbors, shall have full

power and authority to make an inventory and appraisement of the whole estate, real, personal, and mixed, to take into account the portion each one has already had, and to divide and allot to each one such portions of the real estate and such articles of the personal estate as may be brought to their notice by us, and by all means at their command to make an equitable and fair distribution of the estate, so that all the distributees shall have equal and equitable shares—share and share alike—that the party to whom any portion of land, personal property, choses in action, or moneys, may be allotted by said distributors or arbitrators, or a majority of them, shall have the same to keep or to dispose of, as such one may elect to do; and if there shall any question of right arise between us, which we ourselves cannot agree upon, we agree for the said arbitrators before mentioned, a majority of them to decide the same and settle the question; and we do further agree that if by any means any one of the before mentioned neighbors shall fail or refuse to serve as such distributor or arbitrator, the remaining two shall have full power and authority to fill the vacancy, by the selection of some other disinterested neighbor, and such party then selected shall have all the authority given or intended to be given to the party first named, and the said arbitrators or distributors shall have full authority to set aside an amount in money sufficient to meet any legal demands which may reasonably come against the estate; and if the amount then set aside should not be sufficient to pay such demands, we, each for himself and herself, hereby bind ourselves and our legal heirs and assigns, executors and administrators, for our *pro rata* of such lawful demands.

To all of which we, each for himself and herself, bind ourselves in the sum of five hundred dollars, which amount we each of us hereby agree to forfeit for the benefit of the other, if we fail to stand to and abide by and carry out the decision and written award of the said arbitrators or distributees.

Witness our hands and seals this 12th day of November, A. D. one thousand eight hundred and eighty one.

This agreement was signed and sealed by all of the distributees.

EXHIBIT B.

*To whom it may concern:* The undersigned, appraisers and arbitrators, appointed by the legatees of Joel O. Betsill, deceased, on the 12th day of March, A. D. 1881, to appraise and set apart to the legatees such portion of said estate as may appear to be due them, have heretofore examined the different tracts and parcels of land belonging to said estate, and did, on the 15th day of December, 1881, appraise and award to the legatees named in the award different portions of the land as therein described.

But upon the announcement of our award, all the legatees being present, one of the legatees, to wit, Wm. T. Betsill, feeling aggrieved and believing that, under the circumstances attending our examination of the tract of land assigned to him, we had not seen or examined said tract in its true light, and we, the arbitrators, knowing that was on account of the storm of rain and wind at the time did not fully examine the tract. The said Wm. T. Betsill at once gave notice that he would pay the forfeit of five hundred dollars, rather than take the land assigned him, at the price agreed upon ; and it appearing to our satisfaction, from information received, that the remaining legatees magnanimously refused to accept the forfeit of their brother, the said Wm. T. Betsill, and being anxious that the matter should be amicably and equitably adjusted, some of the legatees were disposed, and so expressed themselves, to add to the value first set upon their allotted portion, and that the arbitrators should again go over the tract just assigned to the said Wm. T. Betsill, and carefully examine and appraise the same, and then remodel their award, &c. Now, therefore, we, the said arbitrators, have this day fully and very carefully examined the tract assigned first to the said Wm. T. Betsill, and find that about one half of said tract would be fully valued at three dollars per acre, and the other half would be fully valued at nine and one-half dollars per acre, so that the whole tract would be, say three hundred and thirty-eight acres (more or less), at six and one-fourth dollars per acre. This being tract No. 2, as first awarded. This we award and set apart to Wm. T. Betsill at that price. We also confirm our first appraisement, by setting apart to Joseph A. Betsill, &c. * * * Tract No. 2

(John's Creek), containing two hundred and fifty acres, more or less, we value at six hundred dollars, and leave the same open to be taken by any of the legatees at appraisement, or if more than one of said legatees are willing to take the same at appraisement, the same shall be sold to the highest bidder amongst the legatees on the premises, on the 28th day of February, instant, at 10 o'clock, a. m., unless the legatees make amongst themselves other and satisfactory arrangements for disposing of same, for the benefit of the estate—the term "more or less" is used understandingly—and the exact number of acres is to be ascertained by H. W. Ducker, D. S., and the total value of each tract is to be determined by the exact number of acres thus determined upon. That it is further awarded and agreed upon, that if in a final estimate of each legatee's share of said estate it appears that any one has had more than his or her proportion of said estate, such overplus shall be secured to the others not having their full share, by a first lien or mortgage on the land set apart to such as have been overpaid, or by such other security as the parties may themselves agree upon; and if time is necessary, twelve months may be allowed such delinquent, interest being added from January 1st, 1882; and we, the said arbitrators, hereby, after due consideration, do render this as our duly considered award, as to the different tracts of land in lieu of the award announced the 15th Dec., 1881.

     Given under our hands and seals, this 7th February, A. D. 1882.

                 W. S. GREGORY, [L.S.]
                 G. S. GREGORY, [L.S.]
                 R. F. RAY,         [L.S.]

## EXHIBIT C.

*To whom it may concern:* We, the undersigned, who were chosen by the distributees of the estate of Joel O. Betsill, deceased, to partition said estate amongst the distributees, find that in order to make each distributee equal, so far as can be done at this time, the following amounts must be secured to Robert J. Betsill, Mrs. Eugenia Davis, James L. Betsill, Mrs. Pauline Moore, and Miss Anna M. Betsill, from the overplus found to be due by Wm. T. Betsill and J. Fincher Betsill, to wit, to Robert

J. Betsill eight hundred and twenty-four dollars and eighty-four cents; to Mrs. Eugenia Davis, &c. * * *

We, therefore, in accordance with our award, rendered the seventh day of February, A. D. eighteen hundred and eighty-two, assign to Robert J. Betsill the amount due the estate by William T. Betsill, to wit, seven hundred and fifty dollars and seventy-eight cents, and a part of the amount due the estate by J. Fincher Betsill, say seventy-three dollars and sixteen cents ; we also assign to Mrs. Eugenia Davis, &c. * * * And, according to the compact of agreement entered into by all the distributees or legatees of said estate (entered into on the twelfth day of November, eighteen hundred and eighty-one), and to carry out our award, announced the seventh day of February, 1882, we decide that the claim against Wm. T. Betsill, and hereby assigned to Robert J. Betsill, shall be secured by a first lien on the tract of land, say tract number two, river place, set apart and assigned to Wm. T. Betsill by us on the said 7th day of February, 1882, and the claim against J. Fincher Betsill, &c. * * * And we further decide that these various claims shall be due on the 7th day of February, A. D. eighteen hundred and eighty-three, with interest on the same from the first day of January, eighteen hundred and eighty-two.

Given under our hands and seals, this fifteenth day of June, eighteen hundred and eighty-two.

R. F. RAY, [L.S.]
G. S. GREGORY, [L.S.]
W. S. GREGORY, [L.S.]

From a formal order of the Circuit Judge sustaining an oral demurrer to this complaint, on the ground that it did not state facts sufficient to constitute a cause of action, the plaintiff appealed on the several grounds copied into the opinion of this court.

*Messrs. D. A. Townsend* and *C. H. Peake*, for appellant.

*Mr. William Munro*, contra.

March 30, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. In June, 1881, Joel O. Betsill

departed this life intestate, and in November thereafter, his children, the plaintiff and defendants, being his distributees and all of full age, entered into a written agreement, whereby they appointed three arbitrators or distributors to make distribution of the estate among said distributees, as follows: "Whereas, we are all of lawful age, and capable of looking to our own interest, and are desirous (as far as practicable) of carrying out the often expressed desire of our said parent, with regard to dividing his estate without recourse to law: Now, therefore, be it known that we, the children, sons and daughters of said deceased, do hereby agree that W. Simpson Gregory, Robert F. Ray, and G. Sanford Gregory, all disinterested neighbors, shall have full power and authority to make an inventory and appraisement of the whole estate, to take into account the portion each one has already had, and to divide and allot to each one such portions of the real estate, &c., and by all means at their command, to make an equitable and fair distribution of the estate, so that all the distributees shall have equal and equitable shares," &c., &c. The arbitrators were to decide and settle all questions arising among the parties; and the agreement provided a forfeit of $500, to be paid by any party failing to abide the decision and written award of the arbitrators. (See copy in Brief.)

The arbitrators named undertook the duties assigned them, and on December 15, 1881, announced their decision to the distributees. Upon the announcement, the plaintiff was dissatisfied, and gave notice that he would pay the forfeit rather than take the land "allotted" to him at the price placed upon it. The defendants were unwilling to exact the forfeiture, and it was agreed that the arbitrators should again carefully examine and appraise the same. They did so, and on February 2, 1882, made their award in writing, which is also in the Brief. Upon the final award being made (June, 1882), the distributees interchanged deeds among themselves, and the plaintiff signed "some, if not all, of the deeds." In assessing the amounts to be paid for equality, the arbitrators assigned to the defendant, Robert J. Betsill (who received no land), the amount due by the plaintiff, viz., $750.78. The plaintiff neglected to pay the same, and in September, 1884, Robert brought suit upon the submission and award, and at October term,

1884, obtained a judgment by default against the plaintiff thereon for $896.32 and costs, and on salesday in December, 1884, the tract assigned to the plaintiff was sold under said judgment, and purchased by the said Robert, who received sheriff's titles therefor.

This action was brought by William T. Betsill against the other distributees on April 27, 1888. Among other things, the complaint (7th paragraph) alleges, "that the said valuation (of the tract assigned to the plaintiff) was too high, and otherwise erroneous, in this, that it did not express the joint or several opinion of the three arbitrators, inasmuch as G. S. Gregory never at any time knew that it was the intention of the said Joel Betsill (the intestate) that said land should be valued and assigned to William T. Betsill without the buildings; and when he gave his consent to the said valuation of six and one-fourth dollars per acre, he consented to such valuation and the award of $750.25 to R. J. Betsill as including the buildings on said land; otherwise he would not have consented to the said valuation and award. That, furthermore, the said Robert F. Ray (another arbitrator) never at any time was aware that it was the duty of the said arbitrators in the premises to assign lands to the individual heirs at law of the said Joel Betsill, but supposed that their duty and labors ended when the valuation thereof had been made, and that in any act done by him beyond said valuation, he acted under a misconception of his duties in the premises," &c. ; and upon these allegations chiefly prayed the court "to set aside the said arbitration, and all the proceedings had by said arbitrators be adjudged null and void; and that the judgment against himself be set aside and the sale of the land under it declared null," &c.

The defendants answered, and at the trial interposed an oral demurrer, that the complaint did not state facts sufficient to constitute a cause of action, and the demurrer was sustained. (The whole complaint should be reported.) From the order dismissing the complaint, the plaintiff appeals upon the following grounds:

"I. For that his honor erred in deciding that exhibit A of the complaint [the agreement of submission] embraced all the matter that could be submitted to the arbitrators for their consideration, and that the verbal instructions of Joel Betsill, alleged in the complaint in relation to the division of his estate, and especially

to the valuation of the place where his son William resided without the buildings, and its assignment to him, were badly pleaded.

"II. For that his honor erred in deciding that the verbal instructions of Joel Betsill, in regard to the valuation of the place where his son William resided, were badly pleaded, and could not have been proved, inasmuch as they varied exhibit A of the complaint.

"III. For that his honor erred in not deciding that when the arbitrators amended their first award sometime prior to February, 1882 (and referred to in the award of February, 1882), their power was exhausted, and they had no right to make another, or to do anything else in regard to the matter.

"IV. For that his honor erred in not deciding that, after making the second award, they did not act under the compact embraced in exhibit A of the complaint, but upon a verbal agreement of only a part of the heirs, and that the verbal instructions of Joel Betsill in regard to the valuation of the place where his son William resided, and its assignment to him, could have been introduced in evidence.

"V. For that his honor erred in deciding that all the heirs agreed that the arbitrators make a second award.

"VI. For that his honor erred in deciding that there was an arbitration, when there was no matter in dispute.

"VII. For that his honor erred in deciding that William T. Betsill ratified the action of the arbitrators, after the first award, by 'signing some, if not all, the deeds,' which were interchanged among the heirs of Joel Betsill.

"VIII. For that his honor erred in sustaining the oral demurrer interposed by the defendants.

"IX. For that his honor erred in deciding that allegations in regard to the newly discovered evidence relating to the judgment by default were not properly made, and did not allege enough."

We think there was only one award. The agreement required that each and all of the "parties should stand to, abide by, and carry out the decisions and written award of the said arbitrators or distributors." There is no allegation that the tentative conclusion announced December 15, 1881, was in writing. Indeed, the award was not perfected and finally signed and sealed by the

arbitrators until June 15, 1882. Besides the arbitrators or referees consenting to review their conclusion as to the value of the land—to "carefully examine and appraise" the tract "allotted" to the plaintiff, and it does not lie in his mouth to claim that there were two awards.

The demurrer did not have the effect of admitting as true the allegations of the complaint as to the alleged wishes of the intestate, expressed verbally in his life-time, for several reasons: First, the agreement of submission necessarily contained all the matters referred, and beyond that, neither the plaintiff nor the referees had any authority to go—it was their commission ; and, second, from the character of the verbal declarations of the intestate they were not well pleaded. Every man has the right to make a will, which may express what he desires done with his property after his death ; provided he conforms to the formalities required by law ; that is to say, such wishes must be expressed in writing, and signed by the testator himself in the presence of three witnesses. If, however, he does not desire to make a will, but prefers to die intestate, he cannot control as to the valuation or distribution of his property by merely verbal declarations in his life-time of his wishes upon the subject. He has the right to die testate or intestate ; but if the latter, the law directs as to the valuation and distribution of his property, without regard to any wishes of the intestate not put in the form of a will. As Chancellor Johnston, in *Youngblood* v. *Norton*, 1 Strob. Eq., 128, said : "Any act by which a decedent exercises a control in the disposition or distribution of property belonging to him at his death is, essentially, a testamentary act, and requires the formalities of a will. In the absence of a testamentary disposition, the statute controls the disposition of the property as intestate property ; and it is not competent for a party to give any other direction than the statute gives, unless by a will he deprives the property itself of the character of intestacy, in virtue of which the statute assumes the disposal of it," &c.

But if the verbal statement of the wishes of the intestate were admissible to control the valuation of the tract assigned to the plaintiff, still we do not think that the allegations of the complaint as to subsequently discovered testimony were sufficient to set aside

the award and the judgment by default rendered upon it. The complaint states that the plaintiff did consent to the valuation of the land assigned to him, and acquiesced in the same, until subsequently he discovered two facts, neither of which, nor both together, as we think, were sufficient to open the award and set aside the judgment and sale of the land based upon it. First, it is stated that plaintiff subsequently discovered that one of the arbitrators, Robert F. Ray, "never was aware that it was the duty of the arbitrators to assign lands to the heirs, but he supposed that their duty and labors ended when the valuation thereof had been made." The agreement of submission itself declared that the "shares were to be allotted by the arbitrators, or a majority of them." But suppose the arbitrator did not understand "allot" to mean the same thing as "assign," the plaintiff never complained of the allotment of the tract of land, but only as to the valuation placed on it.

The second fact claimed to have been subsequently discovered was that another arbitrator, G. S. Gregory, "never, at any time, knew it was the intention of Joel Betsill (the intestate) that said land should be valued and assigned to William T. Betsill without the buildings, and when he gave his consent to the said valuation of six and a quarter dollars per acre, he consented to said valuation as including the buildings," &c. Suppose this to be so. There is no allegation of the same kind as to the other two arbitrators ; and, as we have seen, the allotment could be made by the arbitrators, "or a majority of them." It seems to us that it would require much stronger allegations and proof than this case affords to set aside an award or distribution and a judgment based upon it, after it had been accepted and acquiesced in for six years.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.